AO 91 (Rev. 11/11)  Criminal Complaint

United States District Court
Southern District Of Texas
**FILED**
APR 29 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>LUIS SANCHEZ<br>YOB: 1991<br>CITIZENSHIP: MEXICO<br><br>*Defendant(s)* | Case No.<br>M-19-0955-M |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 27, 2019__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. 846 | Conspiracy to manufacture, distribute, or dispense, a controlled substance. |

This criminal complaint is based on these facts:

See Attachment A

☑ Continued on the attached sheet.

*Complainant's signature*

Jacob W. Frey, Special Agent, FBI
*Printed name and title*

Approved by Robert Guerra AUSA
Sworn to before me and signed in my presence.

Date: 04/29/2019

*Judge's signature*

City and state: McAllen, Texas    J. Scott Hacker, United States Magistrate Judge
*Printed name and title*

ATTACHMENT A

AFFIDAVIT IN SUPPORT OF ARREST WARRANT

1. On April 27, 2019, a reliable source of information told FBI agents that a gray Chevy Cobalt bearing license plates "XAA070A" would be parked at the Walmart on Shary Road in Mission. The source of information told FBI agents that the vehicle had just crossed into the United States from Mexico and was loaded with drugs. At approximately 5:02pm FBI agents and task force officers were conducting surveillance in the Walmart parking lot located at 2410 E Expressway 83 in Mission, Texas, when agents observed a male subject walk through the parking lot from Shary Road and get into a gray Chevy Cobalt with license plates XAA070A which was parked between Burger King and Walmart. FBI agents found this to be strange behavior since the subject had not been inside of any of the businesses close to where the vehicle was parked.

2. An FBI agent wearing clothing clearly identifying himself as an FBI agent approached the driver's side of the Cobalt. Upon making contact with the driver, he identified himself as Luis SANCHEZ (Hereinafter "SANCHEZ") and presented a Tamaulipas driver's license bearing that name. SANCHEZ told FBI agents he was the owner of the vehicle and that he had just crossed into the United States from Mexico in the car. FBI agents ran records checks that confirmed the vehicle crossed at 4:12pm. SANCHEZ then verbally gave consent to FBI agents to search the vehicle.

3. SANCHEZ told FBI agents that he agreed to drive the vehicle from Mexico to the Walmart parking lot where an unknown subject was going to pick up the vehicle and leave with it. The subject would later return with the vehicle and turn it back over to SANCHEZ who stated he was then going to return to Mexico. While agents were talking to SANCHEZ, he indicated that he had received a message from his contact in Mexico who was telling him to move the car. The contact wanted SANCHEZ to move the car from its current position to a location closer to where more cars were parked in the parking lot because he

1

did not want the car to be parked out in the open. SANCHEZ said he was about to move the vehicle to a more crowded area when he was approached by FBI agents.

4. SANCHEZ was asked if there were any drugs in the vehicle. SANCHEZ said his contact in Mexico did not tell him where the drugs were located, or what kind of drugs were in the car, but SANCHEZ said it only made sense that there would be drugs in the vehicle.

5. Based on SANCHEZ's statement about drugs in the vehicle, FBI agents drove the vehicle to the Hidalgo Port of Entry to have the vehicle x-rayed by Customs and Border Protection (CBP) equipment. When FBI agents sat in the driver's and passenger's seats they immediately could feel a hard object underneath the seat cushion inconsistent with that of a factory car seat. FBI agents looked under the seat cushion and found non-factory wooden boxes under each seat. The box under the passenger seat was empty, and the box under the driver's seat contained a rectangular package wrapped in brown tape consistent with the way drugs are commonly packaged.

6. The vehicle was driven through the CBP x-ray equipment, which showed rectangular items were hidden in the seat backs of the front passenger and driver's seats. FBI agents searched the areas and found each seat contained wooden non-factory boxes hidden within the seat backs. Seven tape-wrapped bundles were found in the vehicle hidden within these non-factory boxes and weighed approximately 7.38 kilograms. These bundles were wrapped consistently with your Affiant's experience with investigating controlled substances. Agents examined two of the bundles and found both to contain a white powdery substance. A test was conducted on the substance and it identified as cocaine.

7. SANCHEZ was read his Miranda rights and agreed to answer questions. SANCHEZ said he needed money so agreed to lend his car to some people in Reynosa. SANCHEZ knew the people were criminals. He left his car with them at a mechanic shop. When he returned, the subjects took a copy of his driver's license and gave him $80 for expenses. It is common practice for drug traffickers to make a copy of a load driver's license so that

they know who the person is and where he lives. SANCHEZ knew that the mechanic and his associates were criminals.

8. SANCHEZ again told FBI agents that he agreed to drive the car to the Walmart on Shary Road. He was supposed to leave it there for someone else to pick up. The person was going to return his car and then SANCHEZ was supposed to drive back to Mexico where he would be paid $400. SANCHEZ said he thought he was going to be transporting something illegal, but he was not sure what it was. SANCHEZ said he thought the illegal things he was going to transport would be when he travelled from the United States back in to Mexico.

Special Agent Jacob W. Frey
Federal Bureau of Investigation

THE HONORABLE J. SCOTT HACKER
UNITED STATES MAGISTRATE JUDGE